DE GRAND, Respondent, vs. BARKHAUSEN COAL & DOCK COMPANY, Appellant.

*January 13—February 9, 1915.*

*Master and servant: Injury while loading cars: Negligence: Moving loading rig without warning: Failure to make rules: Contributory negligence.*

1. A rig called a whirly, used at defendant's coal dock in unloading vessels and loading cars, consisted of a swinging crane mounted on a steel framework which ran on two rails about fourteen feet apart, being moved thereon by the engine which operated the crane. Gondola cars could pass under it on a track laid between the rails of its track. The engine was located in an inclosed house on the whirly about twenty-two feet above the ground, and the engineer could not see the track in front of the rig for a distance of thirty or forty feet. While a car was being loaded and plaintiff, in the performance of his duty of blocking the car, was sitting on one rail of the whirly track opposite the car wheel and intent upon preventing the car from slipping, the whirly was started without warning and he was caught by it and injured. The whirly made a loud, grinding noise when in motion, and no warning was customary when starting it, although the engine had a whistle. It was not customary for it to move on its track while loading a car. A number of separate crews were working about the dock, and the engineer knew that at least three men were near the whirly and the car which was being loaded. Evidence showing the above and other facts is *held* to sustain findings by the jury to the effect that defendant was negligent in failing to promulgate rules requiring the giving of a signal before moving the whirly; that the engineer was negligent in not sounding a warning; and that plaintiff was not guilty of contributory negligence.

APPEAL from a judgment of the circuit court for Brown county: HENRY GRAASS, Circuit Judge. *Affirmed.*

Action for personal injury. Defendant operated a coal dock in Green Bay. May 1, 1913, plaintiff, then about twenty-seven years of age, was in its employ assisting in loading cars by means of a rig called a whirly. The rig was constructed and operated as follows: It consisted of a swinging crane mounted on a steel framework about sixteen feet high in the clear, and ran on two rails about fourteen feet apart. It would pass under the bridge of the dock and would also permit a gondola car to pass under it on another track located midway between the rails of the whirly track. The whirly rail nearest the edge of the dock was five feet from the bridge rail, which was located near the edge of the dock, and five feet four inches from the nearest rail of the car track. The crane arm was fifty-one feet long, and had a clam-shell bucket attached at the end which could not be moved in and out on the arm. The whirly was moved along the track by the engine that operated the crane. It was located in an inclosed house on the whirly about twenty-two feet above the ground. Owing to the projection of the platform on which the engine house stood, the engineer could not see the track directly in front of the whirly for a distance of some thirty or forty feet.

In operating the whirly the crane was swung over the boat and the bucket lowered into the hold and filled with coal and then swung over the gondola car and emptied. As the bucket could not be moved in and out on the crane arm it was necessary to shift the cars while being loaded. The crew consisted of an engineer and fireman in the crane house upon the rig and three men upon the ground. One of the men moved the car by means of a pinch bar, another worked the hand brake on the car, and the third, the plaintiff, blocked the wheels of the car in order to stop it, as the track was on a slight down grade and the hand brake would not work quickly enough.

At the time of the injury to the plaintiff he was blocking

a car that had been pushed down to within about twenty feet
from the whirly. The car was forty feet long and the coal
was being dropped into about the center of it. The angle at
which the fifty-one foot crane arm was set reduced its hori-
zontal reach to about forty feet. Plaintiff sat on the whirly
track, probably about eighteen or twenty feet from the whirly,
though he claims only from four to eight feet away, watching
his work, with a block ready in case it should need reblocking,
when the engineer of the whirly, without any warning or sig-
nal, started it along the dock for water. No warning was
customary when starting it. Plaintiff did not hear or see
the approach of the whirly and was caught by it and badly
pinched about the thigh.

The jury found (1) that defendant was negligent in fail-
ing to promulgate rules requiring the giving of a signal be-
fore moving the whirly; (2) that such negligence was the
proximate cause of plaintiff's injury; (3) that the failure of
the engineer on the whirly to sound a warning was a proxi-
mate cause of plaintiff's injury; (4) that no want of ordi-
nary care on the part of the plaintiff contributed to his in-
jury; and (5) damages $1,400. From a judgment upon the
verdict in favor of plaintiff defendant appealed.

For the appellant there was a brief signed by *Martin, Mar-
tin & Martin* and *G. F. Clifford,* and oral argument by
*Mr. Clifford.*

For the respondent there was a brief by *Minahan & Mina-
han,* and oral argument by *V. I. Minahan.*

VINJE, J. The refusal of the court to direct a verdict for
defendant on the ground that the evidence failed to show any
negligence on its part, and on the further ground that it
showed contributory negligence as a matter of law, is as-
signed as error. It is established by the evidence that the
whirly had a couple of large gear wheels that moved and
made a loud grinding noise different from any other noise

when it was moving from place to place; that it started very slowly and never reached a speed of more than four miles an hour. For these reasons it is urged there was no necessity for promulgating rules for signals before starting, nor for giving any, since the noise made by the whirly when moving was a sufficient signal. The jury negatived both contentions by finding that defendant was negligent in failing to promulgate rules requiring the giving of a signal before moving the whirly, and inferentially found the engineer guilty of negligence by finding that his failure to give a signal was a proximate cause of plaintiff's injury. The situation and the evidence is such as to warrant both findings. A number of separate crews were working in and about the coal dock in addition to the crew directly engaged in loading the cars. That the whirly when in motion was not only able but likely to inflict severe injuries upon any one inadvertently caught by it or in its path, is self-evident. The engine was supplied with a whistle, affording an efficient means of giving a signal *before* starting. Plaintiff's crew, or part of it at least, including plaintiff, were, in the operation of loading cars, required to work in close proximity to the whirly. The jury might well come to the conclusion that under such circumstances a signal *after* starting and while in motion would not be adequate protection to those who worked about it, though such a signal might meet the requirements as to loudness and as to what it indicated. It is true the plaintiff must have been about twenty feet from the whirly when it started to move, but it is also a verity in the case that he neither saw nor heard it before it was upon him. He so testifies and such must be the fact, for no one can assume that he voluntarily subjected himself to imminent serious injury or death. The situation disclosed was therefore one in which the jury might well say that rules requiring a signal to be given *before* starting the whirly should have been promulgated by the defendant.

When the engineer started up the whirly to go to the other

end of the dock for water the crew had about half loaded a car. The evidence shows that it was not customary for the whirly to move on its own track while loading a car. Owing to the projection of the platform the engineer could not see the ground in the direction he moved the whirly for a distance of some thirty or forty feet. He knew that at least three men belonging to the crew were near the car and near the whirly. He also had reason to believe that they had no cause for anticipating that the whirly would be moved before the loading of the car was completed and yet he started it without blowing his whistle, as he might easily have done. Such conduct sustains a finding of negligence. And since the employer had four or more men in a common employment and the injury happened after the enactment of the law of 1911 (sub. 1, (2), sec. 2394—1, Stats.) the defendant was responsible for the negligence of the engineer.

If it had been the custom to move the whirly on its own track often and at irregular intervals without regard to the work that was being done with it, and the plaintiff had known such a custom, a strong case of contributory negligence would have been presented—perhaps so strong as not to sustain a finding to the contrary. But here we have a case where plaintiff had no reason to believe that the whirly would be moved at least until the car being loaded was finished. One car that morning had been insecurely blocked and had slipped. Plaintiff was intent upon watching this car so that it would not slip and cause trouble. He had a block ready, and as it was convenient for him he sat down on the whirly track just opposite the car wheel, which he says was a good position for him to watch the car. Concede that he might have placed himself in a safe place somewhere else. The position he took cannot as a matter of law be said to be a negligent one in view of the fact that he had no reason to suppose the whirly would be moved until the car was loaded, if then.

*By the Court.*—Judgment affirmed.